UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ARTHUR HUNT

       Plaintiff,

v.                                        **REPORT AND RECOMMENDATION**
                                            **06-CV-00338 (NAM)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I.    Introduction

Plaintiff Arthur Hunt brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

## II.    Background

On December 12, 2000, Plaintiff protectively filed an application for DIB, claiming an onset date of December 1, 1994 (R. at 48).[3] This application was denied initially on February 13, 2001 (R. at 25). Plaintiff protectively filed a second application for DIB on

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rules of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Jo Anne Barnhart as the defendant in this action.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated April 2, 2009.
[3] Citations to the underlying administrative record are designated as "R."

July 15, 2002, claiming an onset date of July 30, 1999 (R. at 52). Plaintiff's second application was denied initially on October 31, 2002 (R. at 26). Plaintiff alleges disability due to lateral subluxation[4] of the patella with a patellofemoral arthritis and tear of the medial meniscus, right knee, status post surgery of arthroscopy,[5] debridement[6] of the patella, partial medial meniscectomy[7] and lateral release;[8] coronary artery disease status post stenting of the left anterior descending artery; degenerative changes in the cervical spine consisting of marked spurring from the C4 through C7 levels and moderate narrowing of the neural foramina[9] bilaterally at the C4-C5 level; osteoarthritis and rotator cuff tendonitis of the left shoulder; obesity; and diabetes mellitus. Plaintiff filed a timely request for a hearing on December 19, 2002 (R. at 35).[10]

On June 16, 2004, Plaintiff appeared before the ALJ (R. at 245). The ALJ considered the case *de novo* and on July 21, 2004, issued a decision finding Plaintiff not disabled (R. at 18, 20). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on January 23, 2006 (R. at 6-9). On March 16, 2006, Plaintiff filed this action.

---

[4] "[A]n incomplete or partial dislocation." *Dorland's Illustrated Medical Dictionary*, 1817 (31st ed. 2007).
[5] "[E]xamination of the interior of a joint with an arthroscope." *Dorland's* at 160.
[6] "[R]emoval of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed." *Dorland's* at 481.
[7] "[E]xcision of an intra-articular meniscus, as in the knee joint." *Dorland's* at 1151.
[8] "[S]urgical division of the lateral patellar retinaculum." *Dorland's* at 1646.
[9] "[I]nvertebral foramen: the passage formed by the inferior and superior notches on the pedicles of adjacent vertebrae; it transmits a spinal nerve and vessels." *Dorland's* at 738, 739, 740.
[10] The document containing Plaintiff's request for a hearing states that his request was made within sixty-five days of the denial (R. at 35). The Court therefore assumes that Plaintiff was appealing the denial of his second application.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[11]

### III.  Discussion

#### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[11] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[12] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

---

[12] This five-step analysis is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

For the reasons that follow, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED.

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 30, 1999 (R. at 15); (2) Plaintiff's "degenerative joint disease of the knees, osteoarthritis of the left shoulder, and obesity" were severe impairments (R. at 16); (3) Plaintiff's "heart disease, diabetes, high blood pressure, high cholesterol, and stomach ulcers" were not severe impairments (R. at 16); (4) Plaintiff's impairments did not "meet or medically equal any

listing in Appendix 1" (R. at 16); (5) Plaintiff had the residual functional capacity ("RFC") to

> lift/carry up to ten pounds on an occasional basis, walk for a total of two hours in an eight-hour day (for one block at a stretch), stand for a total of four hours in an eight-hour day (for 15 minutes at one time), sit for a total of four hours in an eight-hour day (for a total of 20 minutes at one time), stoop to pick up objects from the floor, pick up small objects off a table, lift his arms over his head, and climb four steps while using a cane and holding a rail"

(R. at 17); (6) Plaintiff's "allegations of disabling pain [were] only partially credible" (R. at 17); (7) Plaintiff was not capable of performing his past relevant work as a mason (R. at 18); (8) Plaintiff was capable of performing the following work in the economy: a dispatcher, lock assembler, and lampshade assembler (R. at 18). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 18).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is not made according to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that a) the ALJ erred in failing to fully develop the record with regard to Plaintiff's treating physicians, Dr. Nebzydoski and Dr. Webster; b) the ALJ erred in analyzing Plaintiff's credibility; c) the ALJ erred in analyzing whether Plaintiff met Listing 1.02A; d) the RFC is not supported by substantial evidence; and e) the testimony of the vocational expert ("VE") was flawed.

#### a) The ALJ Erred in Failing to Fully Develop the Record

##### i) The ALJ Erred in Failing to Re-Contact Dr. Webster

Plaintiff argues that the ALJ erred in failing to re-contact Dr. Webster for a functional assessment or medical source statement ("MSS"). Plaintiff's Brief, pp. 14-16.

According to the "treating physician's rule,"[13] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

---

[13] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se.* Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). If the evidence received is not adequate to determine whether an individual is disabled, additional information must be gathered by first re-contacting Plaintiff's treating physician. 20 C.F.R. § 404.1512(e)(1).

"The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)). Because of this 'particularly important' duty, the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional limitations. Dickson, 2008 WL 4287389, at *13.

At the outset, the Court notes that the ALJ failed to grant weight to any medical opinions in the record, including Plaintiff's treating physicians as well as Social Security Administration ("SSA") sources. This is error. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (finding error where the ALJ simply stated he was not granting Plaintiff's treating physicians controlling weight); 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ."); see also 20

C.F.R. § 404.1527(d) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive.").

Dr. Webster was Plaintiff's treating orthopedic surgeon. Plaintiff saw Dr. Webster from October 29, 1999, through May 19, 2000 (R. at 150, 157). On January 6, 2000, Dr. Webster performed surgery on Plaintiff's right knee (R. at 185). Dr. Webster did not supply an MSS or functional assessment, nor does it appear that the ALJ made a request for the physician's opinions. This was error and worthy of remand. See Aiello v. Comm'r of Soc. Sec., 2009 WL 87581, at *5 (N.D.N.Y. Jan. 9, 2009) (internal citations removed) (remanding where "the ALJ took no steps to contact plaintiff's treating physicians to obtain their opinions").

### ii) Dr. Nebzydoski

Plaintiff argues that the ALJ erred in failing to re-contact Dr. Nebzydoski to resolve ambiguities in the MSS he supplied. Plaintiff's Brief, pp. 14-16.

The ALJ has a duty to re-contact a treating physician when the evidence received from that "medical source contains a conflict or ambiguity that must be resolved." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

Treatment notes indicate that Dr. Nebzydoski was Plaintiff's treating physician dating back to March 1994 (R. at 122). On September 23, 2002, Dr. Nebzydoski completed an MSS concerning Plaintiff's functional limitations (R. at 219-222). When asked the weight Plaintiff could occasionally lift and carry, Dr. Nebzydoski stated "minimal at best" (R. at 221). Dr. Nebzydoski then went on to opine that Plaintiff could lift and carry a maximum of ten pounds. Id. Dr. Nebzydoski also found that Plaintiff was limited with the use in his upper extremities but did not expand on that opinion as

9

directed by the document (R. at 222). Finally, Dr. Nebzydoski found that secondary "to coronary disease [and] deconditioning[14] any physical activity would be very limited." Id. Plaintiff argues that these opinions were ambiguous, thereby necessitating re-contact from the ALJ. Plaintiff's Brief, p. 15.

Although the Court would hesitate to remand on this issue alone, the ALJ's failure to weigh any of the relevant medical opinions is reason enough to remand in this case. Thus, on remand, the ALJ should consider whether he needs additional evidence from Dr. Nebzydoski to make a determination on Plaintiff's disability. 20 C.F.R. §§ 404.1512(e), (e)(1) (directing the ALJ to re-contact Plaintiff's treating physician if the record fails to contain adequate evidence on which to make a disability determination).

### b) The ALJ Erred in Analyzing Plaintiff's Credibility

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to

---

[14] Deconditioning is adaptation of an organism to less demanding environment, or, alternatively, the decrease of physiological adaptation to normal conditions. Decondition may result from decreased physical activity, prescribed bed rest, orthopedic casting, paralysis, aging, etc. McGraw-Hill Encyclopedia of Science and Technology 10th Edition, (2007).

determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[15] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

In assessing Plaintiff's credibility, the ALJ found that "[t]he claimant's testimony regarding his daily activities and his physical abilities undermines his claim that he is completely unable to work: he can perform activities of a sedentary nature. Accordingly, based on the totality of the evidence, I find the claimant's allegations of disabling pain to be only partially credible" (R. at 17).

Thus, the ALJ failed to complete the two-step process. The ALJ did not state whether Plaintiff's medically determinable impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). This was error. See Hogan v. Astrue, 491 F.Supp.2d 347, 352-353 (W.D.N.Y. 2007) (remanding,

---

[15] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

in part, because the ALJ failed to find whether plaintiff's impairments "could reasonably be expected to produce the pain . . . she alleged" despite noting that the ALJ "carefully review[ed]" the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii)). Furthermore, the in the present case ALJ failed to engage in any meaningful analysis of the factors. This also was error. Indeed, the only factor the ALJ discussed was Plaintiff's daily activities. See Gorham v. Astrue, No. 7:06-CV-764, 2008 WL 4030650, at *10 (N.D.N.Y. Aug. 25, 2008) (remanding, in part because, "[t]he ALJ failed to fully discuss many of the factors set forth in the regulations").

Moreover, the Court notes that the ALJ's decision is inconsistent with regard to Plaintiff's credibility. The ALJ found that Plaintiff's allegations concerning his pain were only "partially credible" (R. at 17). However, the ALJ then based his RFC finding largely on Plaintiff's testimony because "[c]learly the claimant's testimony took full account of all his impairments, including obesity, and his symptoms, including pain." Id. These findings are inconsistent.

Therefore, the Court recommends remand to allow the ALJ an opportunity to follow the appropriate processes and legal standards in evaluating Plaintiff's credibility.

### c) The ALJ Erred in Analyzing the Listings

Plaintiff argues that the ALJ erred in determining whether Plaintiff met Listing 1.02A. Plaintiff's Brief, pp. 11-14.

Listing 1.02A states:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and

  findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

  A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Pt. 404, Subpt. P, App. 1. The inability to ambulate effectively is defined in the regulations:

  (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
  (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B(2)(b).

  At step three of the sequential analysis, the ALJ found that "the record does not contain findings that meet or medically equal any listing in Appendix 1" (R. at 16). The ALJ failed to state which, if any, Listings he considered.

  "Where the claimant's symptoms as described by the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings." Brown ex rel. S.W. v. Astrue, 2008 WL

3200246, at *10 (N.D.N.Y. Aug. 5, 2008) (quoting Giles v. Chater, 1996 WL 116188, at *5 (W.D.N.Y. Jan. 8, 1996)).

Although the Court has previously recommended remand for failure to develop the record, as the record currently stands, evidence can arguably be found supporting the conclusion that Plaintiff meets Listing 1.02A. First, Plaintiff must show "[m]ajor dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Dr. Webster's post-operative and pre-operative diagnoses for Plaintiff's January 6, 2000 right knee operation included "[l]ateral *subluxation* of the patella . . ., right knee" (R. at 185) (emphasis added).

Next, evidence must establish "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff complained of right knee pain and stiffness (R. at 187, 165, 225). During Plaintiff's consultative exam on October 17, 2002, Dr. Ganesh noted that Plaintiff's right knee flexion was ninety degrees (R. at 228).[16]

Third, Plaintiff must show "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1. A scan of Plaintiff's right knee on October 27, 1999, showed "moderate to advanced degenerative changes of the patellofemoral joint" and "suspicion of a calcified meniscal fragment overlying the lateral compartment" (R. at 134).

---

[16] Normal knee range of motion is 0 to 140 degrees. Shoulder, Elbow, Wrist, Hip, Knee, and Ankle Examination, *United States Department of Veterans Affairs*, http://www.vba.va.gov/bln/21/benefits/exams/disexm34.htm.

The final requirement is the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1. At Plaintiff's consultative exam, Dr. Ganesh noted that "[c]laimant's use of the cane is necessary, especially for distant walking, climbing, and uneven surfaces. . . . Claimant had great difficulty getting on and off [the] table. He needed the cane, as well as help from his wife. He had difficulty aris[ing] from the chair" (R. at 227). Given this evidence, it was error for the ALJ to not discuss why Plaintiff failed to meet Listing 1.04A.

Moreover, adjudicators are specifically instructed to consider an individual's obesity in determining whether that individual meets or equals the musculoskeletal Listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00Q ("[D]isturbance of [the musculoskeletal] system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore . . . adjudicators must consider any additional and cumulative effects of obesity.").

An individual with a BMI[17] over 30 is considered obese. SSR 02-1P, 2000 WL 628049, at *2. An individual with a BMI over 40 falls into the third, and highest, obesity classification. Id. This category is entitled "extreme" obesity. Id. At Plaintiff's consultative internal exam, on October 17, 2002, Dr. Ganesh found Plaintiff's weight was three hundred eight pounds and he was five feet two inches tall (R. at 227). Thus, Plaintiff's BMI was approximately fifty-six. At Plaintiff's hearing, on June 16, 2004, he testified that he was five feet one inches tall and weighed two hundred sixty six pounds (R. at 245,

---

[17] An individual's Body Mass Index "is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$)." SSR 02-1P, 2000 WL 628049, at *2.

252-253). Despite this thirty-five pound weight loss, Plaintiff's BMI remained in the "extreme" obesity category with a BMI of approximately fifty. There is no evidence that the ALJ considered Plaintiff's obesity at step three of the sequential evaluation in combination with his knee impairments.[18]

The Court will not find, as Plaintiff argues, that Plaintiff meets Listing 1.02A because there is conflicting evidence in the record. For example, on February 18, 2000, Plaintiff told Dr. Webster that he "[wa]s able to walk and climb stairs comfortably" (R. at 155). However, as previously stated, the ALJ erred in failing to explain why Plaintiff did not meet Listing 1.02A either alone or in combination with his obesity. Therefore, on remand, the ALJ must consider whether Plaintiff meets Listing 1.02A, either alone or in combination with his obesity, and explain his reasoning.

### d)  The RFC is Necessarily Flawed

Plaintiff argues that the RFC is not supported by substantial evidence. Plaintiff's Brief, pp. 16-18.

Because the ALJ failed to fully develop the record, the RFC is necessarily flawed. Therefore, the Court will not reach whether the RFC, as it stands based on the current record, is supported by substantial evidence.

### e)  The ALJ's Analysis at Step Five is Necessarily Flawed

Plaintiff argues that the ALJ erred in relying on the testimony of the VE without resolving any conflicts between the testimony and the Dictionary of Occupational Titles. Plaintiff's Brief, pp. 18-20.

---

[18] Plaintiff appears to have undergone a consultative exam on January 31, 2001, with Dr. Tacci, at the request of the SSA (R. at 199). At that time Dr. Tacci found Plaintiff's six feet two and one half inches tall and weighed two hundred seventy pounds (R. at 201). Because Plaintiff's height is clearly incorrect, the Court will not rely on these findings.

Because the ALJ failed to fully develop the record, the RFC is necessarily flawed. Thus, any hypotheticals given to the VE are also necessarily flawed.

## IV.  Conclusion

After carefully examining the administrative record, the Court finds that the ALJ erred in failing to grant weight to the medical opinions, in failing to fully develop the record, and in analyzing Plaintiff's credibility. It is therefore recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:   Syracuse, New York
         November 30, 2009

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


DATED:    Syracuse, New York
         November 30, 2009